We'll hear Freeman v. MMLBay State. Mr. Poole. Good morning, Your Honors. My name is Richard Poole. I'm here on behalf of the plaintiff, Appellant Monty Freeman. I would like to reserve three minutes for rebuttal time. Granted. Thank you. In this case, the district court found that the plaintiff's breach of contract claim was barred and precluded by a previous release agreement in a settlement of a class action that occurred in 2004. We contend that the settlement agreement in what is known as the Vericayo case does not preclude the claim in this case and that the district court erred in granting summary judgment against the plaintiff in this case. Excuse me for interrupting, but what are mortality charges? Isn't that what life insurance is by definition? It is. Yeah, and that's part of the issue of why we contend this release agreement is not litigated in the previous case. This case involves a variable universal life policy. So there is an investment component that is where the policy has an accumulated cash value and that cash value is invested in mutual funds or securities of different types. And then there is also a term life component. The mortality charges, there are charges. You pay a premium. Part of the premium you pay goes to your investment account and part of them go to various charges, an expense charge for maintaining the policy, a mortality charge which pays for that term life component of the overall policy. And that's what the mortality charge is in this case. And our contention is that MML has breached this policy by not charging the cost of that term life component but has added what are known in the industry as loads or various expense charges into that mortality charge in addition to the separate expense charge that it charges under the policy. Your complaint is not limited to the post 2003 conduct. Yes, it is. Our class definition is based on the statute of limitations which goes back to a point in 2005 which is after the effective date of the settlement agreement. So this is purely future conduct. And the claims were not litigated in the Veracaio case and our time period does not overlap with the Veracaio case. So explain to me please why the language of paragraph B of the release, and that's at page 26 of the appendix, does not reach your claim. It explicitly releases all claims connected with the insurance policy in the Veracaio action or in any way related in whole or in part to the transaction. Why is that not, as one of our colleagues often says, game set and match? Because the transaction as used in that term must be read in context of what the transaction is at issue. And that's I guess one of our fundamental disputes here is MML would define the transaction as the policy itself. And if that is true, there are no limits on what Why isn't that a reasonable construction, however, given the enormous breadth of the huge undertaking here as there virtually always is in a class action settlement to sweep every possible conceivable claim into that settlement? Why isn't that a reasonable reading? And I think that it is a reasonable reading with respect to claims or the conduct that occurred at that point. But as the law is clear, it does not apply to future conduct. A release agreement cannot give a defendant license to continue to breach a contract. The paragraph as I read it specifies that the release applies regardless of whether the facts giving rise to the claim have been, may have been, or could have been alleged. And that's true. And I don't think that that precludes the claim in this case because there are, we actually don't know in this case when they started adding these loads to the mortality charge that we never got to the discovery phase. But let's assume for the moment that they were charging hidden loads in its mortality charge during the time period that the Veracaio case covered. I don't think, well, I don't think it's disputed in this case. That claim was not litigated. It obviously releases all charges and claims related to any charges assessed under the policy. But if it's given the broad reading of applying to any charge under the policy, the day after Veracaio was settled and the settlement approval was approved by the court, MML under the reading of that release agreement could have taken everybody's investment account and just drained it as a mortality charge. It would have been a clear breach of the contract, but under their reading, that breach is covered by the release and therefore they can do whatever they want with this policy. But no question it is this policy, by which I mean it's the same policy. It is the same policy that was in existence for purposes of the Veracaio settlement, correct? It was. This policy owned by Plaintiff Monty Freeman was in effect during the time period of Veracaio. There's no doubt about that. The one point I guess I would like to make is that none of the class representatives in that case held a variable universal life policy and could not have asserted this claim because they didn't own that claim. Your allegation, rather Freeman's allegation, in the class action complaint relative to the alleged inflated mortality charges is that they began at or after the commencement of the policy. And he purchased the policy in 1999, didn't he? That's correct, but we don't know if it started right at or if they started it at some point in the future adding these loads to the mortality charge. That's where we never got to in discovery. Why isn't this covered by our decision in In re Prudential Insurance where we said that a class representative can enter into a settlement that bars future claims by class members even though the precluded claim was not presented and could not have been presented in the class action itself? Why doesn't that directly refute your claim? Because it's still based, tied to, under the law and under numerous conditions. Well, that's the law. I mean, that's the law of the Third Circuit. Right, but that's not all of the law of the Third Circuit. But this Court has also held that the scope of settlement agreements, of release agreements, must be based on the identical factual predicate. This claim is not based on the identical factual predicate. The same factual predicate, I think. I can agree to that. I think the case is used both terms. You use identical factual predicate, as I recall, in your brief. It's been a while since I've read it. But from whence does that concept derive? What's it tied to? Is it tied to some requirement of Rule 23 jurisprudence? It is not. Where did you come up with it? Well, that is the language of the cases. There are numerous cases that are cited in our brief that use identical factual predicate. And I didn't find any of them that discussed the origins of that doctrine. But I do think it is, in some respects, tied to this notion of what claims could have been asserted in that litigation, and also what the effect of a judgment would be based under the doctrines of race judicata or collateral estoppel. I think it's a similar and related test, and I presume that the origins arise out of those same doctrines. But the Varakella complaint asserted 10 courses of action, including breach of express and implied contract and unjust enrichment, that challenged several MML practices, including improper practices in marketing, selling, servicing and administering permanent and term life insurance, as well as disability. Despite the breadth of that complaint, the complaint didn't allege that MML was adopting mortality charges, but the release covers everything, doesn't it? The broad reading of the release that MML asserts here is inconsistent with the position that the parties took before the court at the approval hearing, in which they said that it did not release future claims for future conduct. The trial court itself acknowledged in approving that the law allows a release to bar future claims for conducts that occurred in the past that are based on the same factual predicate as those claims in this action. That is, all the release at hand includes. And so any claim based on that same factual predicate that occurred at the time, claims that have been asserted, that could be asserted at that time, or get asserted in the future based on that conduct at that time, can be covered by a broad release. But going forward, conduct that occurs in the future cannot be covered by that release. And in fact, the class notice informed the class members, such as Monty Freeman in this case, that this release did not affect their ongoing contractual rights under their policy. Why would anybody settle a class action under those circumstances? The release of a class action can be very broad. And this release is incredibly broad. Even without encompassing this claim, it's still incredibly broad. Will you explain your argument with respect to adequacy of representation? I'm not sure I understood it. The case is treated as two separate doctrines. To me, it's one and the same. The issue is, when we look at what claims were asserted or could have been asserted in that litigation, the adequacy of representation requirement is a due process notion that says, what is fair to preclude an absent class member from asserting in the future? And that's one of the really difficult issues that always comes up when negotiating a class settlement, is the defendant obviously wants peace, and the plaintiff wants to make the defendant happy. I understand all that, but is your argument essentially a collateral attack here on the adequacy of representation in the near matter? Our argument is that the release at hand does not preclude... You cited Stevenson in your brief. And Stevenson was brought as a collateral attack on the judgment. Here, we have a record from the trial court below that the release at hand does not preclude the claims in this case, and that's what we are asserting, is that this release does not, as the parties represented it to the trial court, as the trial court confirmed, and as the class notice notified class members of, that claim doesn't bar these future claims. And that's the issue of adequacy, is Monteframe and the plaintiff here was an absent class member. What he received was the notice. The notice told him that that settlement did not affect his existing contractual rights under the policy. If this release is held to allow MML to charge whichever mortality charge it wants, it is affecting his ongoing, his existing contractual rights. Thank you. Let me, excuse me, may I ask just one question? What is the time period of your claim? It goes back five years. We filed in January of 2010, so it would go back to January of 2005. So nothing before 2005? That's correct. All right. Any more? Very good. That's all. Thank you. Thank you. Thank you. We'll hear you on rebuttal. Good morning, Your Honors. Rob Hochman on behalf of MML. Just to begin with the timing, Your Honor, Judge Sirica, that's nowhere alleged in their complaint that they are alleging only from 2005 forward. They're trying to build in an anticipated statute of limitations defense into their complaint. What they allege in their complaint is exactly what Judge Smith referred to, that beginning at or after the commencement of the policy term. In other words, today... During the time, during the past term. During the time of the Varacalo settlement. Today is the very first time we've heard anything about the notion that the charges they intend to challenge, the cost of insurance charges they intend to challenge, somehow arose after the Varacalo settlement. There's no suggestion in their briefs, there's no suggestion in their briefs below, and there's no suggestion in their briefs that that's true. That's why I was confused on this. Well, I hope I've clarified that, because that's certainly the way we understand it. And as, I'll try to be brief, because Your Honors, I think, have a fairly firm grasp. The language of the release is very clear, and it covers this. You would agree, however, at least that there's nothing that explicitly recites mortality charges in the language of the broad release or in the language of the settlement agreement? Well, mortality charges and cost of insurance charges, it's admitted, are used interchangeably. And the release is very... I'm sorry, mortality charges and what? And cost of insurance charges are used interchangeably. And the release very specifically... It's the same thing. It's the same thing, and the release very specifically refers to cost of insurance charges. And there's a good reason for that, because, Your Honor, the Varacalo complaint, which after all was a comprehensive attempt to lift the cloud that was over for a variety of reasons, hovering over MML's policies that had been issued for years and years, had brought together a variety of claims, including a claim that expressly alleged excessive cost of insurance charges. So it's hardly surprising that when MML sought to put this to rest, they put it to rest by including a release that says, we're done with cost of insurance charges. And as for... That, I think, satisfies, certainly satisfies the same factual predicate standard, explains why Judge Linares, who reviewed the complaint and the release at the time, in 2005, looked at it very carefully, considered an argument specifically addressing whether the release was too broad, and said, look, there's pretty substantial value here, there's adequate representation, MML's entitled to peace for what amounts to roughly $700 million in settlement value. And he provided it. I do think, I believe one of the questions, maybe, I think it was Judge Smith asked about whether this is a collateral attack. Once you understand, once you understand that the charges that are at issue here, at least as far as has been alleged, the charges that are at issue here were instituted at the time of the Varacalo, that covered the Varacalo settlement, then it has to be a collateral attack. It doesn't matter at that point whether the statute of limitations means you can only recover for a year 2006, a year 2007, the point of the release is to lift the clouds over the conduct that MML was engaged in and the way it charged these policies. And so once you say, well, you're allowed to challenge that going forward, well of course MML is going to continue doing what it's paid for the right to continue doing going forward. These are life insurance policies that go on into the future. That's the very purpose of entering into a settlement like that. And I think Judge Slover, you asked about the policy of settlement, and that just leads right into the final punctuation mark, which is you're really going to cast a pall over class action settlements, chill entering into them in the first place. Can you imagine going back to a client and saying, you're paying a substantial amount of money, a huge hunk of which goes to plaintiff's counsel, and plaintiff's counsel retains the right to use that money to finance the next class action against you. That's going to be a tough sell. So unless you have any further questions. Judge Serrica does. What about the constitutional issues? Is there any validity to those? I don't think there's any due process issue here, Your Honor. And I think what that is, is you ask yourself, was there adequate notice? Well, the release was reproduced in the notice. As I said, the release specifically says cost of insurance charges. Was there any conflict of interest in the class? Well, Judge Linares looked at that and said no, and there's certainly no reason to believe there's conflict of interest. And in fact, we've not heard anything throughout the entire litigation here about a potential conflict of interest on the scale of what was at issue in Stevenson. So I think once you have the absence of a conflict of interest, adequate representation, and adequate notice, and an opportunity to opt out, you've satisfied your due process. The notice certainly made clear that it involved the manner in which certain life insurance policies were sold, serviced, and administered. Yeah, but it went on, it went on, and certainly administered would include, I think, these kinds of charges. And again, the complaint had a claim about excessive cost of insurance charges, and the release specifically said, when you sign on to this, you're giving up the right to sue for these sorts of things. The general American case in the Eighth Circuit is, I think, particularly instructive in this regard. There you have a claim about disclosures, settling the case and saying, look, if you agree to sign on to this, you're giving up the right to sue again. And just as Judge Smith pointed out, what's unreasonable about telling somebody when they sign on to a substantial settlement about a particular insurance policy? You look at it, figure out whether you want it. If you do, you're giving up the right to sue for conduct related to that policy. And the Eighth Circuit said, that's exactly what happened here, and that's just fine. And so, unless there are any further questions, Your Honor. You have any? I have none. No. Okay, thank you. Thank you. Mr. Hoffman. Excuse me. Mr. Paul. Mr. Paul? Yes.  Is that basically what you're saying? Yes. That's basically what you're saying. Indeed, it did. Well, but that complaint asserted breach of express and implied contract and unjust enrichment claims, including improper practices in marketing, selling, servicing, and administering the policies. Doesn't that encompass what's at issue here? I don't believe it does. And again, if I can draw an analogy here, or maybe a parallel case, because I do think that what NML is asking for would be a shocking change in the law. If this were, rather than an insurance claim, if this were a minimum wage claim, and there was a large company that was not paying thousands of employees minimum wage claims, and they have a very broad release that takes care of minimum wage and off the clock and vacation pay and termination pay, and all of those things that the release would wipe out. And I have no problem with that. Clearly a release can be broad and can take care of all of those claims. Including future claims. No. The next day, the employer has to pay minimum wage. They can settle minimum wage claims up to that point in time, but they can't have a release and then 50 years later say, this employee's been here for 50 years. We don't have to pay him minimum wage because we settled his claim 50 years ago. I think that would be a shocking change in law, your honor. And I think that is the true distinction between the future conduct. And really this case boils down to, when the courts say that only future conduct survives, and NML says future conduct includes any conduct that began during the settlement release period, and we say it starts over the next day. The minimum wage example is the best example I can come up with, where just because that employee was employed during the class period doesn't mean that the employer no longer has to pay the minimum wage going forward. I did want to respond to the limitation period, which is maybe somewhat related. That is built into the class definition, though I think even if it's not, because the standard is clear that future claims for future conduct cannot be released, the limitations period would be an issue for the class definition, even if we had not included, but it is in fact in the complaint. Do you ever represent defendants in class action cases? I used to for many, many years. I can't imagine what a defendant would be thinking if you're right. If you're right that the next day, the same complaint can be filed, why would, I don't understand why anybody would settle, why any defendant would settle? In my experience, I think a defendant is looking at it, and both sides come to a mediation valuing the exposure as of that date. For example, if... Sure, but that puts a rabbit in a hat. What's the exposure? I think the danger falls far more on the other side. If at a mediation, you reach a tentative agreement, but before the defendant signs the settlement agreement, they go out and institute a whole bunch of brand new unlawful practices and start that, and then the next day sign the settlement agreement and say, oh, all these are present conduct, not future conduct, because they began before we signed the settlement agreement. Again, I think that would be a shocking change in the law, and something that the courts have not anticipated in determining that future conduct can't be barred by release. Thank you. Thank you, Your Honors. Kenny, do you have any more questions? Thank you. Okay. Thank you. We'll take the matter under advisement, and we'll...